**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**


MEDIARECOVER, LLC,

        Plaintiff,

vs.

ALEXANDER GRAU,

        Defendant.

No. C03-2081-LRR

**ORDER**

_____

**TABLE OF CONTENTS**

I.  INTRODUCTION AND FACTUAL BACKGROUND  . . . . . . . . . . . . . . . . . .  2

II.  PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

III.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION  . . . . .  6
    A.  Legal Standard  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
    B.  Personal Jurisdiction Based on Grau's Web Site  . . . . . . . . . . . . . . .  10
    C.  Personal Jurisdiction Based on the Parties' Contract  . . . . . . . . . . . .  15

IV.  MOTION TO TRANSFER VENUE  . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

V.  CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

# I. INTRODUCTION AND FACTUAL BACKGROUND[1]

The matter before the court is Defendant Alexander Grau's ("Grau") Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue (docket no. 27). The motion is resisted.

Plaintiff MediaRECOVER, LLC ("MediaRECOVER") is in the business of manufacturing and selling a software program which is used to recapture digital audio, video, text and photo data that is lost or otherwise misfiled on data storage cards or other data storage devices. Grau is a software engineer who maintains a Web site based in Germany on which Grau advertises "freeware," software available for users to freely download for their personal use. Grau's Web site includes four files that may be downloaded by visitors to the Web site,[2] a list of the files' features, comments from previous users, frequently asked questions, license information, and a link to a contact form. *See* Pl. Ex. A. Relevant to this case, Grau's Web site contains software called "Drive Rescue" which may be used to recover lost or deleted data.

In 2002, FlashcardFIX, the predecessor to MediaRECOVER, was in the business

---

[1] For purposes of deciding this motion, MediaRECOVER's allegations, as pled in the Complaint, are accepted as true and all reasonable inferences from the allegations are construed in the manner most favorable to MediaRECOVER. *See Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). The court's factual background, therefore, is comprised of MediaRECOVER's allegations and the exhibits attached to the parties' briefs regarding the pending Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue.

[2] The four files available on Grau's Web site include: (1) rescue.zip, to be used to install Drive Rescue on the computer on which files have been lost or damaged; (2) tips.zip, which includes tips for successfully recovering lost data; (3) rescue_disk.zip, to be downloaded to a disk for an emergency recovery of a drive containing Windows; and (4) rescue_src.zip, which contains the source code for programmers who wish to use the code for other purposes.

of recovering media data from removable data storage units that were sent to it for processing. On April 24, 2002, Korey Bachelder, on behalf of FlashcardFIX, sent an e-mail to Grau asking, "Would you be at all interested in creating a private label version of your software for my company?" Pl. Ex. B. On April 25, 2002, Grau responded via e-mail, writing the following: "I can offer you a distribution agreement (with personalized logos etc.) or a source code license for commercial use. I have attached an order-formular [sic] with this e-mail." Pl. Ex. C. Also on April 25, 2002, approximately two hours after receiving Grau's response, Bachelder sent another e-mail to Grau in which Bachelder asked: "Have you licensed a lot of these programs out?? And after I buy the source code I can make any medications [sic] I want[,] correct?" Pl. Ex. D.

On June 3, 2002, Grau sent an e-mail to FlashcardFIX and MediaRECOVER stating Grau determined FlashcardFIX and MediaRECOVER had been selling his software without having a commercial license. Pl. Ex. F. Grau asked FlashcardFIX and MediaRECOVER to purchase a license to use the source code for a commercial purpose or to stop selling Grau's source code because FlashcardFIX and MediaRECOVER were violating the terms of the free download. *Id.* Grau further informed FlashcardFIX and MediaRECOVER that he and the companies who possessed valid commercial licenses for the source code could take legal action against FlashcardFIX and MediaRECOVER if they did not comply with Grau's demand. *Id.* Grau stated he was going to inform the companies in Europe and the United States which already held valid commercial licenses to use and sell the source code of FlashcardFIX's and MediaRECOVER's actions. *Id.* Grau attached an order form so FlashcardFIX and/or MediaRECOVER could apply for a commercial license to use and sell the source code. *Id.* Also on June 3, 2002, approximately 17 hours after receiving the e-mail from Grau, Bachelder responded via e-mail, in relevant part, "Yes, sorry about the delay in getting back to you. I will be

ordering the license within a few days. I was just testing to see if it would sell." Pl. Ex. G. On June 9, 2002, Bachelder sent an e-mail to Grau which stated, "The check will be sent out tomorrow 6/10/02 to you for the license. I am going with the 899 EURO, as well as the DEMO version. Thank you." Pl. Ex. H. Bachelder tendered a single lump-sum royalty payment of $900.81 to obtain the license from Grau. On July 2, 2002, Grau's brother, responding on Grau's behalf, sent an e-mail to FlashcardFIX, confirming the order:

> A) Digital Image Recovery 1.47 (for unlimited sales in time and units; Source Code for Borland Delphi 6; Multilingual version support: Chinese, Danish, Dutch, English, French, German, Hungarian, Italian, Japanese, Norwegian, Portuguese (Brazil/Portugal), Spanish)
> B) Demo Version of Digital Image Recovery 1.47 (not capable to [sic] recover files)[.]

Pl. Ex. I. Grau's brother attached the source code to the e-mail. *Id.*

At the inception of the incorporation of MediaRECOVER, FlashcardFIX assigned to MediaRECOVER all assets relating to FlashcardFIX's business, including the license agreement with Grau.[3]

The license agreement provides in relevant part as follows:

> This source code license authorizes the licensee to develop programs from the source code. The copyright is kept by the author "Alexander Grau[."] You will own the rights to use, to translate, to modify the source, [to] create derived works and to sell them.

On February 27, 2003, Grau sent an e-mail to MediaRECOVER stating Grau was

---

[3] The court has been provided with no information regarding the date on which MediaRECOVER was incorporated or the date on which FlashcardFIX assigned its assets to MediaRECOVER.

attempting to terminate the license agreement. Ten minutes after receiving the February 27, 2003 e-mail from Grau, David Zimmerman, President of L.C. Technology International, Inc. ("LCT"), also notified MediaRECOVER via e-mail that Grau was attempting to terminate the license agreement between Grau and MediaRECOVER. Zimmerman's e-mail further apprised MediaRECOVER that LCT was empowered to and was acting on behalf of Grau. The stated ground for the attempt to terminate the license agreement was the alleged improper use of Grau's trademark, DIGITAL IMAGE RECOVERY, in the marketing literature and packaging of MediaRECOVER's software program. Grau purported to rely upon the following language found in the license agreement: "The licensee is not authorized to distribute the programs under the name 'Drive Rescue' or 'Digital Image Recovery[.']" The license agreement does not contain a termination or cancellation clause. There was no notice or opportunity to cure provided to MediaRECOVER for any alleged impropriety.

On or about November 7, 2003, LCT filed suit against MediaRECOVER in the Circuit Court for Pinellas County, Florida. Def. Ex. C. On or about November 28, 2003, MediaRECOVER removed the case to the United States District Court for the Middle District of Florida (hereinafter, the "Florida litigation"). *Id.* In the Florida litigation, LCT alleges a claim of copyright infringement, contending it is the exclusive licensee of the source code for Digital Image Recovery.

## II. PROCEDURAL BACKGROUND

On December 19, 2003, MediaRECOVER filed a Complaint for Declaratory Relief with this court. MediaRECOVER invokes this court's jurisdiction inasmuch as complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. MediaRECOVER is incorporated under the laws of

Iowa.[4]  Grau is a citizen of Germany.

On January 23, 2004, MediaRECOVER filed an amendment to the Complaint, adding new exhibits in support of its Complaint.

On September 9, 2004, Grau was personally served with copies of the Summons, Complaint, and amendment to the Complaint, all of which were translated into German.

On September 29, 2004, Grau filed the pending Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue.  On October 13, 2004, MediaRECOVER resisted Grau's Motion.  Grau filed a reply brief on October 26, 2004. MediaRECOVER filed a supplemental resistance on November 2, 2004.  Grau, with leave of court, filed a surreply brief on April 21, 2005.  Neither party requested oral argument so the court will decide Grau's Motion solely on the briefs.  Finding the Motion to be fully submitted to the court, the court turns to address its merits.

### III.  MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In his Motion to Dismiss, Grau moves the court to dismiss MediaRECOVER's declaratory judgment action against him because the court lacks *in personam* jurisdiction.[5] Specifically, Grau, a citizen of Germany, contends his actions in entering the license agreement with MediaRECOVER do not constitute sufficient contacts with Iowa such that

---

[4] At the time MediaRECOVER filed the action, its principal place of business was located in Decorah, Iowa.  In Bachelder's affidavit attached to MediaRECOVER's brief, Bachelder states he "recently" moved the sales office of MediaRECOVER to Chandler, Arizona and MediaRECOVER maintains its receiving, product storage and shipping functions in Decorah, Iowa.  Additionally, MediaRECOVER's Web site, as of September 23, 2004, states its "main office" is located in Chandler, Arizona and its "warehouse" is located in Decorah, Iowa.  Def. Ex. E.

[5] Grau does not state the legal authority upon which he bases his Motion to Dismiss. The court assumes Grau moves pursuant to Federal Rule of Civil Procedure 12(b)(2).

the exercise of jurisdiction over him would comport with traditional notions of fair play and substantial justice. MediaRECOVER responds the court properly can assert personal jurisdiction over Grau because his actions in entering into the license agreement with MediaRECOVER constitute sufficient contacts with Iowa for purposes of personal jurisdiction.

### A.  Legal Standard

A defendant may move the court to dismiss an action where the court lacks *in personam* jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). Where a party moves to dismiss for lack of personal jurisdiction, the nonmoving party must only make a prima facie showing of the court's jurisdiction. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003) (citing *Falkirk Min. Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 373 (8th Cir. 1990); *Watlow Elec. Mfg. v. Patch Rubber Co.*, 838 F.2d 999, 1000 (8th Cir. 1988)). "The party seeking to establish the court's in personam jurisdiction carries the burden of proof, and the burden does not shift to the party challenging jurisdiction." *Id.* (citing *Gould v. P.T. Krakatau Steel*, 957 F.2d 573, 575 (8th Cir. 1992); *Newhard, Cook & Co. v. Inspired Life Ctrs., Inc.*, 895 F.2d 1226, 1228 (8th Cir. 1990)). A plaintiff need not prove the court's jurisdiction by a preponderance of the evidence until trial or an evidentiary hearing. *Id.* (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991) (in turn citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986))). At this stage in the proceedings, "[f]or the purposes of a prima facie showing [of *in personam* jurisdiction], the court must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996) (citing *Dakota Indus., Inc.*, 946 F.2d at 1387).

In a lawsuit in which the court's jurisdiction is based solely on diversity of the

parties, "[a] federal court . . . may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Romak USA, Inc. v. Rich*, 384 F.3d 979, 984 (8th Cir. 2004) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). In this case, the forum state is Iowa. Therefore, the court will look to Iowa's long-arm statute and the Due Process Clause of the United States Constitution to determine whether this court has *in personam* jurisdiction over Grau.

Iowa's long-arm statute provides:

> If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, . . . such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section. . . . The making of the contract . . . shall be deemed to be the agreement of . . . such person that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa. The term "resident of Iowa" shall include any Iowa corporation, any foreign corporation holding a certificate of authority to transact business in Iowa, any individual residing in Iowa, and any partnership or association one or more of whose members is a resident of Iowa.

Iowa Code § 617.3. Iowa's long-arm statute extends the jurisdiction of the Iowa courts to the outer limits permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* Iowa R. Civ. P. 1.306 ("Every corporation, individual, personal representative, partnership or association that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such corporation, individual, personal representative, partnership or association amenable to suit in Iowa in every case not

contrary to the provisions of the Constitution of the United States."); *Ross v. First Sav. Bank of Arlington*, 675 N.W.2d 812, 815 (Iowa 2004) ("The Due Process Clause of the Fourteenth Amendment to the federal constitution limits the power of a state to assert personal jurisdiction over a nonresident defendant to a lawsuit.") (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)); *Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution.") (citing *Meyers v. Kallestead*, 476 N.W.2d 65, 67 (Iowa 1991)). Therefore, the court turns to address the due process question.

"To satisfy due process a defendant must have sufficient minimum contacts with the forum state 'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Romak USA, Inc.*, 384 F.3d at 984 (quoting *Dever*, 380 F.3d at 1073 (in turn quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1002 (8th Cir. 1996))). "More particularly, there must be 'some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Dever*, 380 F.3d at 1073 (in turn quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958))). "The contacts with the forum state must be more than 'random,' 'fortuitous,' or 'attenuated.'" *Dakota Indus., Inc.*, 946 F.2d at 1389 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Furthermore, in a case such as this, involving specific personal jurisdiction, "'jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state.'" *Id.* (quoting *Dever*, 380 F.3d at 1073).[6] In

_____

[6] "The Supreme Court has noted that states exercise two broad types of personal
(continued...)

determining whether this court has specific personal jurisdiction over Grau, the court must consider "'(1) the nature and quality of [Grau's] contacts with [Iowa]; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of [Iowa] in providing a forum for its residents; and (5) [the] convenience of the parties.'" *Id.* (quoting *Dever*, 380 F.3d at 1073-74). "[A] prima face case of specific jurisdiction can only be established if [Grau] 'has purposefully directed [his] activities at [Iowa] residents,' and the claim of this suit either 'arises out of' or 'relates to' these activities." *Lakin*, 348 F.3d at 707 (quoting *Burger King Corp.*, 471 U.S. at 472).

### B. Personal Jurisdiction Based on Grau's Web Site

Grau argues the facts that (1) his Web site is accessible by people in Iowa and (2) individuals may download free software from his Web site are not enough to establish sufficient contacts with Iowa such that the court's exercise of jurisdiction over him is appropriate. MediaRECOVER contends Grau's Web site, while allegedly allowing individuals to download software for free, actually transacts business because Grau asks users to send donations if they download his software. Therefore, MediaRECOVER urges, Grau's Web site provides sufficient contacts with Iowa for the court to exercise *in personam* jurisdiction over Grau.

The Eighth Circuit Court of Appeals has adopted the approach of the United States

---

<sup>6</sup>(...continued)
jurisdiction: specific jurisdiction and general jurisdiction." *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 707 (8th Cir. 2003) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984)). "Specific jurisdiction refers to jurisdiction over causes of action that 'arise out of' or 'relate to' a defendant's activities within a state." *Id.* (citing *Burger King Corp.*, 471 U.S. at 472). "General jurisdiction, 'on the other hand, refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Id.* (quoting *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)).

District Court for the Western District of Pennsylvania in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), to determining specific jurisdiction based solely on a defendant's contacts with a forum state via the Internet. *Lakin*, 348 F.3d at 710-11. In *Zippo*, the court noted, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of the commercial activity that an entity conducts over the Internet." 952 F. Supp. at 1124. The court created a "sliding scale" to measure the likelihood of personal jurisdiction based on the nature and quality of the commercial activity. *Id.*

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Id.* (internal citations omitted).

In *Zippo*, the court reviewed several cases involving personal jurisdiction based solely on Internet contacts in order to illustrate what conduct fits within each category on the sliding scale. *Id.* at 1124-25. First, the court described a case involving a Web site which promoted its upcoming Internet service, assigned users an electronic mailbox and forwarded advertisements to those electronic mailboxes for products and services that

matched the users' interests. *Id.* (citing *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1330 (E.D. Mo. 1996)). The *Maritz* court opined this justified the exercise of personal jurisdiction over the defendant because the defendant's conduct amounted to "active solicitations" and "promotional activities" designed to "develop a mailing list of Internet users" and the defendant "indiscriminately responded to every user" who accessed the Web site. *Id.* (citing *Maritz, Inc.*, 947 F. Supp. at 1333-34).

The *Zippo* court next reviewed two cases with similar fact patterns that resulted in different conclusions regarding the proper exercise of personal jurisdiction. *Id.* at 1125. In one case, the defendant's contacts with the forum state consisted of posting a Web site that was accessible to approximately 10,000 residents of the forum state and maintaining a toll-free number. *Id.* (citing *Inset Sys., Inc. v. Instruction Set, Inc.*, 937 F. Supp. 161, 165 (D. Conn. 1996)). The *Inset Systems, Inc.* court determined, "advertising on the Internet constituted the purposeful doing of business in the forum state because 'unlike television and radio advertising, the advertisement is available continuously to any Internet user.'" *Id.* (quoting *Inset Sys., Inc.*, 937 F. Supp. at 165). In the second case, the defendant's Web site contained general information about the defendant's club, a calendar of events and ticket information. *Id.* (citing *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 297 (S.D.N.Y. 1996)). The *Bensusan Restaurant Corp.* court held the Web site was not interactive. *Id.* (citing *Bensusan Rest. Corp.*, 937 F. Supp. at 297). The *Bensusan Restaurant Corp.* court reasoned the defendant, through its passive Web site, did not purposefully avail itself of the forum state's laws. *Id.* (citing *Bensusan Rest. Corp.*, 937 F. Supp. at 301).

Finally, the *Zippo* court distinguished a case in which a state appeals court refused to exercise jurisdiction over a consumer of an on-line airline ticketing service. *Id.* (citing *Pres-Kap, Inc. v. Sys. One, Direct Access, Inc.*, 636 So. 2d 1351 (Fla. App. 1994)). The

*Zippo* court recognized the exercise of jurisdiction over a consumer of on-line services differs from the exercise of jurisdiction over a seller because "[w]hen a consumer logs onto a server in a foreign jurisdiction he is engaging in a fundamentally different type of contact than an entity that is using the Internet to sell or market products or services to residents of foreign jurisdictions." *Id.*

Other courts also have addressed cases in which personal jurisdiction is alleged in whole or in part on the fact the nonresident defendant maintains a Web site accessible in the forum state. The United States District Court for the Southern District of Iowa determined the plaintiff had not shown the defendant's Web site rose above the "passive" end of the sliding scale where the evidence showed the Web site:

> contains descriptions of [the defendant's] products, technical and other product information, and instructions for customers wishing to place orders for its products. The website also allows prospective purchasers to download a catalog containing the [defendant's] products. The [defendant's] website does not permit online placement of orders or any other "exchange of information[,"] and the ability of prospective customers nationwide to access the information it contains does not confer jurisdiction on this Court.

*Med-Tec Iowa, Inc. v. Computerized Imaging Reference Sys., Inc.*, 223 F. Supp. 2d 1034, 1038 (S.D. Iowa 2002). Likewise, the United States District Court for the District of Minnesota analyzed a Web site which allowed users to exchange information with the host computer by posting and responding to messages, signing a guest book and communicating with other visitors. *Bible & Gospel Trust v. Wyman*, 354 F. Supp. 2d 1025, 1030 (D. Minn. 2005). In *Bible & Gospel Trust*, the court determined the Web site fell within the "middle ground" set forth in *Zippo*, so the court had to examine the level of interactivity and the commercial nature of the exchange. *Id.* The court ultimately determined the Web site did not establish sufficient minimum contacts to allow the court

to exercise personal jurisdiction over the nonresident defendant. *Id.* (citing *Zidon v. Pickrell*, 344 F. Supp. 2d 624, 630 (D.N.D. 2004) (holding a Web site including an e-mail hyperlink, information and an electronic bulletin board to allow individuals accessing the site to exchange information with each other did not establish sufficient contacts with the forum state for the court to exercise personal jurisdiction over the nonresident defendant); *Atkinson v. McLaughlin*, 343 F. Supp. 2d 868, 874 (D.N.D. 2004) (determining the inclusion of an e-mail hyperlink in an otherwise passive Web site was not, alone, enough to become "interactive" under the *Zippo* sliding scale)).

After reviewing other cases applying the "sliding scale" first set forth in *Zippo*, the court finds Grau's Web site is a passive Web site. Grau's Web site allows users to download files, lists frequently asked questions and the answers, gives technical information regarding the products, includes testimonials from former clients and allows users to enter information into a contact form. Although Grau's Web site asked users for donations, the court finds the request does not amount to "transacting business," as MediaRECOVER contends, because there is no evidence Grau knew who downloaded his software and contacted them directly for payment. The court finds Grau's Web site most closely aligns with the passive Web site in *Med-Tec Iowa, Inc. See* 223 F. Supp. 2d at 1038. Furthermore, there is no evidence Grau took any purposeful action towards Iowa: Grau did not direct any paid advertising to Iowa or solicit Iowa residents to visit his Web site. *See ALS Scan, Inc. v. Digital Serv. Consult., Inc.*, 293 F.3d 707, 712-13 (4th Cir. 2002) (opining personal jurisdiction requires "*purposeful* conduct directed at the State") (emphasis in original); *Lindgren v. GDT, LLC*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004) (determining the court lacked personal jurisdiction over a defendant where the defendant did not direct its activities at Iowa). Therefore, the court refuses to exercise *in personam* jurisdiction over Grau based on the facts his Web site is accessible in Iowa and

users can download free software from it.

## C. Personal Jurisdiction Based on the Parties' Contract

Grau argues the license agreement is not a sufficient contact for the court to exercise jurisdiction over him. Specifically, Grau contends he did nothing to direct his actions at Iowa and, in fact, Bachelder initiated the contacts, so he did not purposefully avail himself of the privilege of doing business in Iowa. MediaRECOVER responds Grau sent numerous e-mail messages to an individual in Iowa during the negotiations process. Furthermore, MediaRECOVER maintains Grau proposed the licensor/licensee relationship so Grau should be subject to *in personam* jurisdiction of this court. Finally, MediaRECOVER asserts Grau "knew that the product he was providing under the license agreement would be utilized, marketed and sold by an Iowa citizen residing in Decorah, Iowa."

The court has before it the following evidence regarding the interaction between the parties during the formation of the license agreement. On April 24, 2002, Bachelder sent an e-mail to Grau asking whether he would be interested in creating a private label version of his software for FlashcardFIX. On April 25, 2002, Grau responded by offering Bachelder either a distribution agreement or a source code license for commercial use. Grau attached an order form to his e-mail. Later the same day, Bachelder inquired as to whether Grau had licensed many source codes for commercial use and whether Bachelder could modify the source code once he entered into a license agreement. On June 3, 2002, Grau sent an e-mail to FlashcardFIX and MediaRECOVER stating Grau determined FlashcardFIX and MediaRECOVER had been selling his software without having a commercial license to do so. Grau asked FlashcardFIX and MediaRECOVER to purchase a license to use the source code for a commercial purpose or to stop selling Grau's source code because FlashcardFIX and MediaRECOVER were violating the terms of the free

download.  Grau further informed FlashcardFIX and MediaRECOVER that he and the companies who possessed valid commercial licenses for the source code could take legal action against FlashcardFIX and MediaRECOVER if they did not comply with Grau's demand.  Grau stated he was going to inform the companies in Europe and the United States which already held valid commercial licenses to use and sell the source code of FlashcardFIX's and MediaRECOVER's actions.  Grau attached an order form so FlashcardFIX and/or MediaRECOVER could apply for a commercial license to use and sell the source code.  Also on June 3, 2002, Bachelder apologized for the delay, stated he was testing to see if his product using Grau's source code would sell, and indicated he would order the commercial license in the next few days.  On June 9, 2002, Bachelder sent an e-mail to Grau in which he stated the check for the commercial license would be sent the next day.  Bachelder indicated he wished to purchase a source code license for €899 (pursuant to the pricing on the order form) and also wished to purchase the "demo" version of the program.  On July 2, 2002, Grau's brother sent an e-mail to Bachelder, confirming Bachelder's order of the source code for Borland Delphi 6 for Digital Image Recovery 1.47 for unlimited sales in time and units with multilingual version support including Chinese, Danish, Dutch, English, French, German, Hungarian, Italian, Japanese, Norwegian, Portuguese, and Spanish.  Grau's brother also confirmed Bachelder's order of the "demo" version of Digital Image Recovery 1.47.  Grau's brother attached the source code to the e-mail.

MediaRECOVER's declaratory judgment action is based on the license agreement between Grau and MediaRECOVER.  However, "[i]f the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, [the Supreme Court] believe[s] the answer clearly is that it cannot." *Burger King Corp.*, 471 U.S. at 478; *see also Ross*, 675

N.W.2d at 816 (holding "a contract *alone* cannot automatically establish sufficient contacts" for exercising personal jurisdiction over a nonresident defendant) (emphasis in original) (citations omitted).

> Instead, [the Supreme Court has] emphasized the need for a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction. It is these factors – prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing – that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Burger King Corp.*, 471 U.S. at 479 (internal quotation marks and citations omitted). Therefore, the court must also look at the parties' overall transaction. It is undisputed Grau never visited Iowa before, during or after entering into the license agreement with Bachelder on behalf of FlashcardFIX. The parties negotiated via e-mail prior to entering into the license agreement. After the creation of the license, the parties clearly never contemplated future transactions or discussions because the license allowed FlashcardFIX to use Grau's source code "for unlimited sales in time and units." The agreement does not contain a termination provision and does not indicate the parties' intent in the event of a breach of the license agreement or other termination. Furthermore, the contract does not contain a choice of law provision in the event the parties disagreed on a term in the future and needed to resort to legal action. Although MediaRECOVER asserts Grau knew the source code would be "utilized, marketed and sold by an Iowa citizen residing in Decorah, Iowa," the court has before it no evidence that during negotiations, Grau knew that Bachelder was in Iowa, that Grau was sending his e-mail to an individual in Iowa, or that

he was dealing with someone on behalf of an Iowa corporation.[7] Furthermore, the only exhibit purporting to be MediaRECOVER's Web site indicates MediaRECOVER's "main office" is in Chandler, Arizona. Def. Ex. E. Thus, due to the lack of proof Grau purposefully availed himself of the privilege of conducting business in Iowa, the court finds maintenance of this action in the United States District Court for the Northern District of Iowa offends traditional notions of fair play and substantial justice.

Furthermore, the court finds the factors to be considered when determining whether exercising *in personam* jurisdiction is appropriate based on the parties' contract weigh against exercising it in this case. First, Grau's contacts with Iowa were solely via e-mail and were initiated by Bachelder. *See Hodges v. Hodges*, 572 N.W.2d 549, 552 (Iowa 1997) (stating if a nonresident defendant "has *purposefully* directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant has notice it may be haled into court such that it is appropriate for a court to assert jurisdiction over the person of the nonresident

---

[7] MediaRECOVER cited no evidence to support its assertion Grau knew the source code would be utilized, marketed and sold by an Iowa citizen residing in Decorah, Iowa. The court's own review of the record revealed Bachelder included the following signature stamp on his e-mail messages to Grau early in the negotiations: "Korey Bachelder, CEO, Flashcardfix.com. Pl. Ex. B, D. Two of Bachelder's later e-mail messages include a signature stamp which reads, "Korey Bachelder, CEO, mediaRECOVER, 1923 University Drive, F1, Cedar Falls, IA 50613, 319.277.2031, sales@mediaRECOVER.com." Pl. Ex. G, H. Grau's subsequent response to Bachelder is addressed to "Korey Bachelder, CEO, Flashcardfix.com." Pl. Ex. I. The court finds the signature stamp in two e-mail messages indicating MediaRECOVER is located in Cedar Falls, Iowa is insufficient to demonstrate Grau knew Bachelder and FlashcardFIX were in Decorah, Iowa and the source code would be utilized, marketed and sold in Iowa. Even if such evidence were sufficient to demonstrate Bachelder were physically in Iowa during the negotiations, it is not sufficient to demonstrate Grau directed his activities at Iowa. *See ALS Scan, Inc.*, 293 F.3d at 712-13; *Lindgren*, 312 F. Supp. 2d at 1131.

defendant) (emphasis in original); *All Tech Inc. v. Power Prods. Co.*, 581 N.W.2d 202, 204 (Iowa App. 1998) (determining it was critical to the court's jurisdiction analysis that the business relationship between the parties was not solicited by the defendant but instead by the plaintiff); *OmniLingua, Inc. v. Great Golf Resorts of World, Inc.*, 500 N.W.2d 721, 725 (Iowa App. 1993) (holding the nonresident defendant "did not unilaterally inject itself into doing business in Iowa," and therefore was not subject to the jurisdiction of the Iowa courts where the plaintiff, rather than the defendant, solicited the contract ultimately created between the parties). Second, Grau made four contacts with Iowa throughout the process of entering into the license agreement with Bachelder, one in which Grau threatened to pursue legal action if FlashcardFIX and MediaRECOVER continued to use Grau's software without entering into a license agreement. Third, the cause of action, a declaratory judgment action seeking a declaration the license agreement was not properly terminated, is directly related to Grau's contacts with Iowa. Fourth, Iowa has an interest in providing a forum for its residents, including MediaRECOVER, which is an Iowa corporation. Fifth, an Iowa forum is not particularly convenient for either party: the witnesses and records relevant to this case are not in Iowa. Grau and Bachelder, likely to be the only two witnesses, are out of state. Grau is in Germany and Bachelder is in Arizona. Because the parties' negotiations all occurred via e-mail and the source code was sent to FlashcardFIX via e-mail, the records likely are available on the parties' computers, neither of which is currently located in Iowa.

For the foregoing reasons, the court finds Grau's contacts with Iowa based on the contract are insufficient to establish *in personam* jurisdiction over him.

### IV.  MOTION TO TRANSFER VENUE

In his alternative Motion to Transfer Venue, Grau asks the court to transfer the case to the United States District Court for the Middle District of Florida for consolidation with

the Florida litigation.[8]  MediaRECOVER argues transfer is inappropriate because the factors the court must consider in deciding a motion to transfer weigh against transferring the case.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the transfer is warranted.  *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).  Furthermore, § 1404(a) does not allow a court to transfer a suit to a district which lacks personal jurisdiction over the defendants, even if they consent to suit there.  *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960) (holding the power of a district court to transfer an action pursuant to § 1404(a) does not depend on "the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff").  "Section 1404(a) only authorizes the transfer of an entire action, not individual claims." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir.1991) (citations omitted); *accord Wyndham Assoc. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968). Section 1404(a) does not authorize a court to transfer part of a case for one purpose while maintaining jurisdiction over part of the case for another purpose.  *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515, 516 (8th Cir. 1985).  Rather, § 1404(a) "contemplates a plenary transfer" of the case.  *Id.*

In its Complaint for Declaratory Judgment, MediaRECOVER alleges it is an Iowa corporation having its principal place of business in Decorah, Iowa, and Grau is a citizen of Germany.  Bachelder later stated under oath MediaRECOVER has moved its sales

---

[8] Grau does not state the legal authority which would allow this court to transfer the case.  The court assumes Grau moves pursuant to 28 U.S.C. § 1404(a).

office to Chandler, Arizona. MediaRECOVER's Web site as of September 23, 2004 indicated its main office is in Chandler, Arizona, and its warehouse is in Decorah, Iowa. As previously stated, this court cannot transfer a case to another district unless that district would have had personal jurisdiction over the parties. *See Romak USA, Inc.*, 384 F.3d at 984 (quoting *Dever*, 380 F.3d at 1072). In this case, the proposed forum state is Florida. Therefore, the court must look to the extent of jurisdiction permitted by Florida's long-arm statute and the Due Process Clause of the United States Constitution.[9]

Florida's long-arm statute provides, in pertinent part, as follows:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> (b) Committing a tortious act within this state.
>
> (c) Owning, using, possessing, or holding a mortgage or other lien on any real property within this state.
>
> (d) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (e) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state

---

[9] The court has already set forth the due process standard, *supra*, at pp. 9-10 and will not repeat it here.

at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

    1. The defendant was engaged in solicitation or service activities within this state; or

    2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

(h) With respect to a proceeding for paternity, engaging in the act of sexual intercourse within this state with respect to which a child may have been conceived.

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fl. Stat. § 48.193(1)-(2).

Although Florida's long-arm statute possibly could provide jurisdiction over Grau if he engaged in a business venture in Florida, the court does not have before it any evidence Grau entered into his contract with LCT in Florida. Furthermore, turning to the due process inquiry, there is no evidence before the court which indicates Grau has purposely availed himself of the privilege of conducting activities in Florida, thus invoking the benefits and protections of its laws, and thus becoming subject to *in personam*

jurisdiction in Florida. Without such purposeful action by Grau, the court finds Grau lacks sufficient minimum contacts with Florida to become subject to *in personam* jurisdiction in that forum. Furthermore, even assuming Grau has sufficient minimum contacts with Florida, the court finds the injury giving rise to the Iowa litigation did not occur within or have some connection to Florida. Therefore, the case presently before this court could not have been brought in Florida and the federal and state courts in Florida lack personal jurisdiction over Grau for purposes of this case. Because the United States District Court for the Middle District of Florida, the proposed transferee court, lacks personal jurisdiction over Grau, the court may not transfer the case to that venue under 28 U.S.C. § 1404(a).

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**:

(1)     Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, or Alternatively, to Transfer Venue (docket no. 27) is GRANTED in part and DENIED in part.

(2)     Plaintiff's Complaint for Declaratory Relief is DISMISSED without prejudice.

(3)     All costs are assessed against Plaintiff.


**SO ORDERED.**

**DATED** this 12th day of May, 2005.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA